Vanneman v. Powers.

*Nelson Cross,* for the appellant.

*Ira D. Warren* (in person), for the respondent.

Present—BARNARD, P. J., GILBERT and TAPPEN, JJ.

---

CHARLES P. VANNEMAN, Respondent, *v.* MILLIE D. POWERS, Appellant, impleaded, &c.

(GENERAL TERM, SECOND DEPARTMENT, 1872.)

The plaintiff was induced by fraudulent representations to make a contract to exchange his land for other land, and a mortgage, of little value compared with amount secured, at its face.   On the day for consummating the contract it appeared that the wife of the defrauder held the mortgage as assignee, though evidence was given to show that she held it for her husband's benefit.   The wife was present and the plaintiff's deed was made, by her suggestion, to her.   She executed the assignment, joined in her husband's conveyance, and the plaintiff gave notes to her order for interest due on liens on the land conveyed to her by him. *Held,* that the evidence warranted a verdict against the wife for damages as an active party to the fraud.

A tender of reconveyance to the plaintiff, without offer of the notes, *held*, not a rescission of the contract, although made after receipt of a letter from plaintiff reciting the fraud and proposing, in general terms, a settlement. Such a letter was not an overture for rescission of the contract.

*Held*, further, that the wife was liable in damages under the rule that the representations of an agent are, in law, those of the principal.

THIS was an appeal by the defendant, Millie D. Powers, wife of her co-defendant, upon a case and exceptions from a judgment rendered for plaintiff upon a verdict.

The action was brought to recover damages for false and fraudulent representations which had induced the plaintiff to exchange certain lands for other lands and a bond and mortgage.

The plaintiff proved that in May, 1869, he was the owner of a farm of twelve acres of land in New Jersey, with buildings and improvements upon it, which he valued in all at $21,000, of which value $14,000 was covered by mortgages to that amount, leaving to the plaintiff $7,000 as the value of his equity. This farm he placed in the hands of one Jaques, a broker in real estate, for sale or exchange, and was afterward introduced by Jaques, at the latter's office in New York, to Edward J. Powers, the defendant, who represented that he owned a first bond and mortgage for the sum of $5,000 on ninety-eight acres of land in Middlesex county, New Jersey, known as the Robert Griffith farm. On the same day, the plaintiff took Powers and the broker to his property, and, after examination of it, Powers offered in exchange for it the bond and mortgage on the so-called Griffith farm and 120 acres of land in Iowa, and made representations to the plaintiff that the interest on the bond and mortgage had always been paid promptly when or soon after due. That Griffith, the mortgagor, was an old contractor of responsibility and ability to pay, who resided at Staten Island, and that the farm which the mortgage covered was worth $9,200, and had on it good buildings and fences. Without examining into the truth of the statement or visiting the premises, but relying on the representations of Powers, although the property was not

Vanneman v. Powers.

known to him or to his broker, the plaintiff agreed to make the exchange, and he made a written memorandum to that effect, which he delivered to Powers.

On the 9th June, when the papers were to be exchanged, the plaintiff met Powers and his wife, the appellant, by appointment, at the office of Jaques, and the memorandum was carried out satisfactorily by the plaintiff's conveyance, of the property as agreed, to the wife, which conveyance was so made to her upon her own suggestion, and also by the plaintiff's giving his two notes, payable to the order of the wife, to Powers, for interest which had accrued on the $14,000 liens on his own property; these notes were for $150 and $800 respectively. The Griffith mortgage named in the memorandum proved to be held by the wife as assignee, and was a purchase-money mortgage, originally given to her by Griffith on a sale of the property covered by it to him. Mrs. Powers assigned it to the plaintiff, and also joined with her husband in conveying the Iowa land to the plaintiff.

There was default in the first payment of interest on the $5,000 mortgage assigned to the plaintiff, which led to inquiry, and resulted in the discovery of the falsity of the representations made to the plaintiff by Powers.

Griffith turned out to be worthless and irresponsible, and the farm upon which the $5,000 mortgage was secured was of but trifling value, estimated at from five to six dollars per acre.

The mortgage, after it had been given to Mrs. Powers originally, which was in October, 1859, had been assigned by her to one Lawrence, who died, and whose executors sold it at auction, when it was purchased by Powers, and an assignment taken in the name of his wife, and his testimony was that she held it for his benefit, to which there was no direct contradiction other than the assignment to her individually. The reassignment to Mrs. Powers by the Lawrence executors was in 1867, but the mortgage bore indorsements purporting to be signed by Mrs. Powers, though in fact signed in her name by her husband, of receipts for eighteen different semi-annual

payments of the interest, and these receipts were shown to have been made by Powers at one time. The representations made by Powers to the plaintiff were in the main shown to have been without any foundation, and fraudulently made. The plaintiff paid the larger note, but the smaller remained unpaid.

Prior to the commencement of the action the plaintiff's attorney wrote a letter to Mrs. Powers, in which he stated that he had not been successful in seeing her at her house, on calling for the purpose of giving her an opportunity to restore to his client that which had been fraudulently taken from him; that the plaintiff had made a full statement of the facts of the case to him; and, referring to the transaction as fraudulent, informed her that he desired to save her expense, and to give her an opportunity to restore to the plaintiff an equivalent to that which she had taken from him, and, giving a time until which he would delay proceedings, requested her to seek an interview with him at his office before the time.

Mrs. Powers had at that time conveyed the property covered by the plaintiff's deed to her, subject to the mortgages thereon, as security for a loan of some $300, but she caused a tender of a deed from her grantee to be made to the plaintiff after the receipt of this letter and before suit, and a demand of the $5,000 mortgage and reconveyance of the Iowa land. The plaintiff referred the parties to his attorney, and there was evidence tending to show that he had absolutely refused to rescind the contract.

*A. R. Dyett,* for the appellant.

*Nelson Cross,* for the respondent.

Present—BARNARD, P. J., GILBERT and TAPPEN, JJ.

By the Court—GILBERT, J. The appeal being from the judgment, we are precluded from a review of the facts further than to see that they are sufficient to warrant the verdict

Vanneman *v.* Powers.

of the jury. Upon this subject we think a strong case was made in favor of the plaintiff. The action was for damages sustained in consequence of fraudulent representations. That the plaintiff was defrauded was clearly proved, and the evidence, we think, was sufficient to warrant the conclusion that Mrs. Powers was an active party to the fraud. She was, therefore, liable, irrespective of the question of the agency of her husband. Being privy to his fraudulent representations, she was equally liable as if those represenations had been made with her own mouth. The case was submitted to the jury in that view, and they evidently were satisfied that Mrs. Powers was guilty of the fraud. We do not see how they could have reached any other conclusion. The letter of Mr. Barowsky cannot be considered an overture for a rescission of the contract, which was the subject of the fraud, nor was any rescission accomplished, because Mrs. Powers did not offer to return the notes. If there had been an offer to rescind, and it had been accepted and carried out by the defendant, there might be ground for holding that the parties had settled the matter by way of accord and satisfaction. But the evidence falls short of that. The plaintiff was, therefore, entitled to retain his bargain and recover the damages which he had sustained by means of the fraud. If the foregoing views are correct, none of the defendant's exceptions are tenable.

We are also of opinion that Mrs. Powers was liable in damages for the fraud of her husband, on the ground that the representations of an agent are in law the representations of the principal. In respect of the liability of a principal for the acts of his agent done in the course of the agent's employment and for the benefit of the principal, no sensible distinction can be drawn between the case of fraud and any other wrong. For what difference can it make to the person defrauded whether the principal sends an agent to cheat him, or does it himself?

The judgment must, therefore, be affirmed, with costs.